**COMSYS INFORMATION TECHNOLOGY SERVICES, INC. f/k/a Metamor Information Technology Services, Inc. f/k/a Comsys Technical Services, Inc., Appellant,**

v.

**TWIN CITY FIRE INSURANCE COMPANY and Specialty Risk Services, Inc. f/k/a ITT Specialty Risk Services, Inc., Appellee.**

No. 14–02–00241–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 4, 2003.

Rehearing Overruled March 18, 2004.

---

41. *Asahi,* 480 U.S. at 115, 107 S.Ct. at 1034.

42. Senior Chief Justice Paul Murphy sitting by assignment.

Debora S. Pacholder, John Zavitsanos, Houston, TX, for appellants.

Amy Jean Schumacher, Gregory F. Burch, Houston, TX, for appellees.

Panel consists of Chief Justice BRISTER and Justices YATES and HUDSON.

## OPINION

J. HARVEY HUDSON, Justice.

Comsys Information Technology Services, Inc. f/k/a Metamor Information Technology Services, Inc. f/k/a Comsys Technical Support Services, Inc. ("Comsys") appeals the denial of its summary judgment against Twin City Fire Insurance Company and Specialty Risk Services, Inc. f/k/a ITT Specialty Risk Services, Inc. (hereafter jointly referred to as "Twin City") and the granting of Twin City's summary judgment. We reverse and remand.

Comsys' predecessor, COREStaff, Inc., purchased an Excess Temporary Employment Contractors Errors or Omissions Liability Insurance Policy from Twin City. The effective date of the policy was July 25, 1997; it was to expire on July 25, 2000. The policy had a limit of $5,000,000 and a self-insured retention of $250,000.

Texas State Low Cost Insurance, Inc. ("TSLCI") hired Comsys to develop and implement a project known as the "Computer Automated Records System (CARS) Migration Project." On August 4, 1997, TSLCI notified Comsys that it intended to bring suit for negligence and negligent misrepresentation in failing to properly perform and supervise work performed on the computer system. On August 11, 1997, Comsys notified Twin City that TSLCI was going to file suit against it; Twin City acknowledged receipt of the no-

tice. On September 11, 1997, TSLCI sued Comsys for problems with the computer project, asserting claims for negligence, gross negligence, negligent misrepresentation, DTPA violations, knowing DTPA violations, and breach of express and implied warranties. TSLCI also sought damages for overcharges, loss of revenue, and loss of good will.[1] Comsys filed a counterclaim against TSLCI for unpaid work.

On February 11, 2000, Comsys settled the TSLCI suit at mediation for $275,000, plus the forgiveness of $114,000 in unpaid work that Comsys had performed for TSLCI. Accordingly, Comsys sought recovery of approximately $139,000 on its insurance claim.

On March 28, 2000, Twin City denied coverage for Comsys' claim because Comsys settled the TSLCI suit without obtaining consent in violation of the terms of the policy. Comsys brought suit against Twin City, asserting claims for breach of contract, violations of articles 21.21 and 21.55 of the Texas Insurance Code, and breach of the duty of good faith and fair dealing. All parties moved for summary judgment. The trial court granted Twin City's motion for summary judgment, while denying Comsys' motion for partial summary judgment.

In its motion for summary judgment, Twin City asserted that Comsys was not entitled to coverage under the terms of the policy because (1) "it forfeited its right to recover ... when it settled the lawsuit with TSLCI without Twin City's ... consent," (2) "many or all of TSLCI's claims and alleged damages are excluded under the policy," (3) "Comsys cannot meet its burden of identifying what portion of the settlement, if any, was attributable to cov-

---

1. *Texas State Low Cost Ins., Inc. v. Metamor Info. Tech. Servs., Inc. f/k/a Comsys Tech. Servs., Inc. f/k/a Cutler–Williams, Inc.,* No. 97– 10420 (53d Dist. Ct., Travis County, Tex. Sept. 11, 1997).

ered claims," and (4) it was "not entitled to recover for the debt that it 'forgave' as part of the settlement." The trial court granted Twin City's motion for summary judgment without specifying the basis for its ruling.

### COVERAGE UNDER THE POLICY

In its first point of error, Comsys contends the trial court erred in granting the motion for summary judgment because the policy expressly provides coverage for its claims.

■■■ We first observe that in an insurance contract dispute, the initial burden falls upon the insured to establish coverage under the terms of the policy. *Venture Encoding Serv., Inc. v. Atlantic Mut. Ins. Co.*, 107 S.W.3d 729, 733 (Tex.App.-Fort Worth 2003, pet. denied). But while the initial burden fell upon Comsys, Twin City had the burden, in a summary judgment context, to show that no material fact issue existed and that it was entitled to judgment as a matter of law. *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222 (Tex.1999). Once the defendant establishes that no genuine issue of material fact exists regarding an element of the plaintiff's claim, the plaintiff must present competent summary judgment evidence raising a fact issue on that element. *Guest v. Cochran*, 993 S.W.2d 397, 401 (Tex.App.-Houston [14th Dist.] 1999, no pet.). In conducting this review, we take as true all evidence favorable to the nonmovant, and we make all reasonable inferences in the nonmovant's favor. *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999). When both sides move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review all summary judgment evidence, de-termine all questions presented, and render the judgment the trial court should have rendered. *Bradley v. State ex rel. White*, 990 S.W.2d 245, 247 (Tex.1999).

Here, the summary judgment reflects that TSLCI sent a demand letter to Comsys in August 1997, seeking $402,000 in damages. TSLCI subsequently filed suit against Comsys on September 11, 1997. It is apparent from Twin City's file notes dated September 16, 1997, that Twin City was aware that the amount of TSLCI's alleged damages might exceed the $250,000 self-insured retainer and after a preliminary coverage review, determined that certain exclusions might apply to preclude coverage of some of TSLCI's damages.[2] Twin City did not, however, exercise its right to defend Comsys, but simply asked Comsys if it could obtain a settlement of less than $250,000. In an affidavit submitted in support of Twin City's motion for summary judgment, Mike McCallum, litigation specialist for Twin City, stated that in November 1997, Comsys informed Twin City that it thought it could settle the TSLCI suit within the $250,000 self-insured retention. McCallum explained that he called Comsys' defense counsel, David Chamberlain, in November 1999, to determine whether the case had a true value over $250,000. According to McCallum, Chamberlain told him it might take up to $150,000 to settle the TSLCI case; Twin City set the reserve at $200,000.

McCallum further stated that he spoke to Amir Alavi, senior vice president of Comsys, on December 21, 1999, to discuss potential coverage questions and inquire whether Comsys wanted Twin City to address the coverage issues at that time or wait until the claim had an obvious value in excess of the $250,000 retention. McCal-

---

**2.** The file notes state exclusions found in sections I.2.l (failure to meet cost estimates or guarantees) and I.2.y (claims arising from breach of express warranty) "might apply."

lum asserts that although Alavi told him he would discuss the issue with Comsys' insurance attorney and get back to him, Alavi did not follow up with him. When McCallum next spoke to Alavi on January 21, 2000, Alavi, again, did not follow up with him.

According to McCallum, on February 3, 2000, Chamberlain requested that he attend the mediation conference scheduled for February 11, 2000. On February 7, 2000, Chamberlain advised McCallum that Comsys had not evaluated the claim in excess of $250,000, but there had been some discussion about offering $250,000 and waiving the $114,000 in unpaid bills; Comsys still had not requested a coverage opinion.

On February 9, 2000, two days prior to the scheduled mediation, Alavi formally requested a coverage opinion from Twin City. When Alavi called McCallum during the February 11, 2000 mediation, advising him that the figure under discussion was in the $350,000 range, McCallum advised him that he could not authorize a settlement because the claim had not been fully evaluated for coverage or value.

Also, during the mediation, Alavi faxed a letter to McCallum informing him that Comsys was in a position to make a settlement offer of $200,000 in cash plus forgiveness of $114,000 in debt and requesting that McCallum provide the reasons for Twin City's unwillingness to acknowledge coverage. Responding by letter, McCallum informed Alavi that Twin City would not be able to render a coverage position because two days was not adequate time in which to render a final opinion and further pointed out that Comsys had not provided

an evaluation indicating a valuation in excess of $250,000 and "[o]ur first notice of your evaluation (based on your current offer to plaintiff) in excess of your retention was today."

■ A month-and-a-half after settlement, Twin City denied coverage because (1) Comsys was not "legally obligated" to pay damages since TSLCI obtained a settlement rather than a judgment, and (2) Comsys settled without Twin City's consent.[3]

### *Waiver of the Consent Clause*

Comsys contends Twin City waived the settlement-without-consent provision when it waited a month-and-a-half after the settlement to finally deny coverage. Alternatively, Comsys argues that Twin City is estopped to rely upon the consent provisions by its delay in deciding coverage. *See Minnesota Mut. Life Ins. Co. v. Morse,* 487 S.W.2d 317, 320 (Tex.1972); *Farmers Tex. County Mut. Ins. Co. v. Wilkinson,* 601 S.W.2d 520, 521 (Tex.Civ. App.-Austin 1980, writ ref'd n.r.e.) (holding the doctrines of waiver and estoppel may operate to avoid conditions that would otherwise result in forfeiture of an insurance policy).

■ Waiver is an intentional relinquishment of a known right or intentional conduct inconsistent with that right. *Jernigan v. Langley,* 111 S.W.3d 153, 156 (Tex.2003) (per curiam); *United States Fid. & Guar. Co. v. Bimco Iron & Metal Corp.,* 464 S.W.2d 353, 357 (Tex.1971). Waiver can be established by either an express renunciation of a known right or by silence or inaction for so long a period

---

**3.** As for Twin City's "legal obligation" argument, a court judgment is not the only manner by which Comsys could become legally obligated to pay TSLCI's claim. *Texas Prop. and Cas. Ins. Guar. Ass'n v. Boy Scouts of* *Am.,* 947 S.W.2d 682, 691 (Tex.App.-Austin 1997, no writ). A legal obligation can also arise out of a contract, such as a settlement. *Id.*

as to demonstrate an intention to yield that known right. *Tenneco, Inc. v. Enterprise Prods. Co.*, 925 S.W.2d 640, 643 (Tex. 1996). Although waiver is generally a fact issue, if facts and circumstances are admitted or clearly established, it then becomes a question of law. *Motor Vehicle Bd. v. El Paso Indep. Auto. Dealers Ass'n, Inc.*, 1 S.W.3d 108, 111 (Tex.1999).

Twin City responds by asserting that the doctrines of waiver and estoppel cannot be used to create coverage where none exists by the terms of the policy. *See Texas Farmers Ins. Co. v. McGuire*, 744 S.W.2d 601, 602–03 (Tex.1988). Contrary to Twin City's assertion, however, Comsys does not raise waiver and estoppel as a vehicle by which to create coverage under the policy; rather it asserts Twin City has waived, or is estopped to rely on, this forfeiture provision by waiting until after a mediated settlement to deny coverage. Thus, the pivotal issue to be determined is at what point in the aforementioned proceedings did Twin City have a duty to determine coverage.

■■ An insurer must, "within a reasonable time," either "affirm or deny coverage of a claim" or "submit a reservation of rights" to the policyholder. Tex. Ins. Code Ann. art. 21.21, § 4(10)(v) (Vernon Supp.2003). In a general liability policy, the insurer's duty to defend arises with the filing of a suit against its insured, and this duty to defend is determined by comparing the allegations in the pleadings with the language of the insurance policy. *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex.1997). Thus, when the insurer has a duty to defend, it must decide the issue of coverage within a reasonable time after the filing of a suit. ■ However, the duty to defend and the duty to indemnify are distinct and separate duties. *Trinity Universal Ins.*

*Co. v. Cowan*, 945 S.W.2d 819, 821–22 (Tex. 1997). Unlike the duty to defend, the duty to indemnify is based on facts proven, not on pleadings. *Pilgrim Enter., Inc. v. Maryland Cas. Co.*, 24 S.W.3d 488, 492 (Tex. App.-Houston [1st Dist.] 2000, no pet.). Thus, "the duty to indemnify only arises after an insured has been adjudicated, whether by judgment or settlement, to be legally responsible for damages in a lawsuit." *Collier v. Allstate County Mut. Ins. Co.*, 64 S.W.3d 54, 62 (Tex.App.-Fort Worth 2001, no pet.). Thus, when the insurer has only a duty to indemnify, it must decide the issue of coverage within a reasonable time after judgment or settlement.

■ Here, the policy at issue obligates Twin City to indemnify, but not defend Comsys. For example, the policy promises to pay on behalf of the insured "all sums which the insured shall become *legally obligated to pay as damages.*" (emphasis added). Moreover, the policy states that the "*insured* against whom a 'claim' is made shall have the duty to defend any 'suit' seeking damages"; the "*insured* will ... have the obligation of paying any defense counsel selected by or on behalf of the insured and all defense costs"; and the insurer "shall not be obligated to assume charge of, participate in, or pay for the investigation or defense of any "claim" or "suit."" (emphasis added). Notwithstanding these disclaimers, the policy also provides that if the suit is "reasonably likely" to result in damages in excess of the self-insured retention, Twin City has "the right but not the duty to assume control of the defense." Accordingly, if Twin City wanted to exercise its right to defend, it was obliged to decide coverage issues within a reasonable time after TSLCI filed its suit. On the other hand, if Twin City chose only to indemnify, it was obliged to decide cov-

erage issues within a reasonable time after the settlement.

■ Here, the policy provides that no insured will, "except at [its] own cost, make or agree to any settlement for a sum in excess of the 'self-insured retention' without our consent." But Twin City could not unilaterally obstruct a settlement agreement because the policy also provides that where the insured is willing to accept a settlement offer, and the insurer is not, the insurer "shall have the right to litigate in lieu of such settlement and will bear all 'claim expenses' subsequently incurred and any damages in excess of the amount for which the 'claim' could have been settled." Accordingly, under the terms of the policy, Twin City was obliged to either consent to the settlement agreement or assume the responsibility of defending Comsys. Twin City did neither.

■ An insurer may forfeit its right to control settlements when it violates its own contractual obligation to an insured. 22–137 HOLMES' APPLEMAN ON INSURANCE 2D *Insured May Settle Claim* § 137.10[A][1] (2003). If an insurer has breached its covenant, whether the breach is express or implied, the insured is free, despite limiting policy provisions, to protect his or her own interest in minimizing potential liability in excess of limits by agreeing to a reasonable good-faith settlement. *Id.*

It is undisputed that Comsys asked Twin City to attend the mediation conference more than a week before it occurred. Twin City chose not to participate in the settlement negotiations. The only reason given by Twin City for refusing to attend the settlement conference was that it did not have sufficient time to investigate coverage issues. However, as we have already observed, there were no coverage issues to be resolved prior to settlement unless Twin City exercised its option to defend which it did not do during the two-

and-a-half years in which the suit was pending.

Twin City cites *Munster Steel Company v. Travelers Indemnity Company* for the proposition that mere silence or acquiescence to mediation is insufficient to establish waiver of the consent provision. 620 S.W.2d 771, 772 (Tex.Civ.App.-Dallas 1981, no writ). In *Munster Steel,* the court held that where the insurer was kept informed of settlement negotiations, but failed to object and further failed to disapprove the settlement upon receipt did not constitute waiver of the consent provision. *Id.* In concluding that the insured failed to establish a fact issue on waiver, the court specifically stated that "waiver cannot be inferred from mere silence." *Id.* However, the Supreme Court of Texas has held that waiver can be established by silence or inaction for so long a period as to show an intention to yield the known right. *Tenneco, Inc.,* 925 S.W.2d at 643. Moreover, as we have previously observed, remaining silent was not an option available under the terms of this policy—Twin City was required to either consent to the settlement or assume the defense.

### *Prejudice*

■ Even if Twin City did not waive the "consent" provision, such a provision "will not operate to discharge the insurer's obligations under the policy unless the insurance company is actually prejudiced or deprived of a valid defense by the actions of the insured." *McGuire v. Commercial Union Ins. Co.,* 431 S.W.2d 347, 353 (Tex. 1968). Twin City argues that Texas courts have only applied the prejudice requirement with regard to a consent provision in the uninsured motorist context and, therefore, it is not clear if such a requirement exists in this case. *See Hernandez v. Gulf Group Lloyds,* 875 S.W.2d 691, 693 (Tex. 1994) (explaining that in cases involving

underinsured motorist claims, there may be instances where settlement without insurer's consent will prevent "the insurer from receiving the anticipated benefit from the insurance contract; specifically, the settlement may extinguish a valuable subrogation right," but where any extinguished subrogation right has no value, there is no material breach of the settlement-without-consent clause).

 To the contrary, the prejudice requirement has also been applied in a non-uninsured motorist context involving a consent provision. *See Insurance Co. of N. Am. v. McCarthy Bros. Co.*, 123 F.Supp.2d 373, 379–80 (S.D.Tex.2000). To enforce a condition precedent to coverage, the insurer must prove that it was prejudiced by the insured's failure to comply with the relevant condition. *Id.* at 379 (citing *Hernandez*, 875 S.W.2d at 692–94). In requiring that the insurer establish prejudice, Texas law recognizes that only a material breach excuses performance. *Id.; Hernandez*, 875 S.W.2d at 693 (explaining that where insurer is not prejudiced by settlement, insured's breach is not material). The mere fact that the insurer owes money that it does not wish to pay does not constitute prejudice as a matter of law. *McCarthy Bros. Co.*, 123 F.Supp.2d at 379. Texas law does not presume prejudice in settlement-without-consent cases. *Hanson Prod. Co. v. Americas Ins. Co.*, 108 F.3d 627, 631 (5th Cir.1997).

Twin City contends that even if it must establish prejudice, it, nonetheless, has shown it was prejudiced by Comsys' settling the TSLCI suit without consent because it was deprived of the opportunity to evaluate the settlement and verify that it was covered by the policy. In September 1997, Twin City knew some exclusions might apply to TSLCI's claims. Moreover, although McCallum was asked to attend the mediation on behalf of the insurers, he did not. We recognize that establishing prejudice may be a difficult burden.[4] However, Twin City has not raised even an inference of collusion, fraud, or other connivance in the settlement agreement.

 Having declined to defend Comsys, Twin City could not frustrate Comsys' effort to defend itself by obtaining what it believed to be a favorable mediated settlement agreement. In other words, Twin City could not obstruct a settlement by refusing to attend the mediation conference and then assert the settlement was obtained without its consent. Accordingly, we find (1) there is a fact issue regarding whether Twin City waived its right to rely upon the no-settlement-without-consent provision of the policy, and (2) it was, in any event, not prejudiced by the settlement agreement. Appellant's first point of error is sustained.

## POLICY EXCLUSIONS

In its second point of error, Comsys contends the trial court erred in finding

---

4. The requirement of showing prejudice was strongly criticized in *Gates Formed Fibre Products, Inc. v. Imperial Casualty. & Indemnity Co., et al.*, 702 F.Supp. 343 (D.Me.1988). There the court wrote:

> Prejudice arising from a lack of notice to the insurer may be very difficult to establish. To establish prejudice, the insurer would have to prove that the result of the settlement negotiations would have been more favorable to it had it received notice and been permitted to participate in settlement negotiations. This would place an unfair burden on the insurer to prove what is really, at best, almost always a highly speculative fact. To require a demonstration of substantial detriment to the insurer as a result of lack of notice would therefore seriously impair the practical efficacy of the cooperation clause ... if it does not eviscerate it entirely.

*Id.* at 348.

that certain policy exclusions applied to deny coverage.

■ As an initial matter, Comsys contends Twin City waived reliance on any exclusionary provisions in the policy because (1) they were not raised in the letter denying coverage and (2) Twin City took actions inconsistent with any such exclusions by assuming its defense. While Twin City stated in its letter denying coverage that Comsys violated the terms of the policy by settling without its consent, it further explained that "there may be other policy conditions, exclusions or provisions that might apply, limit or preclude coverage and we do not wave [sic] any rights under the policy or the law, whether specifically mentioned herein or not." Further, while Twin City monitored and investigated TSLCI's claims to some extent, such conduct does not constitute an assumption of the defense. *See Arkwright–Boston Mfrs. Mut. Ins. Co. v. Aries Marine Corp.*, 932 F.2d 442, 445 (5th Cir.1991) (finding no authority to support proposition that insurer's participation in settlement negotiations, when insured has retained independent counsel, is tantamount to assuming insured's defense); *American Eagle Ins. Co. v. Nettleton*, 932 S.W.2d 169, 174 (Tex.App.-El Paso 1996, writ denied) (rejecting argument that by continuing to investigate, by acting on behalf of insureds, and by conducting settlement negotiations even after insureds refused to sign reservation of rights letter, insurer waived all of its policy defenses). Thus, we do not find Twin City waived any exclusions in the policy.

■ While the insured bears the initial burden of showing the claim against it is covered by the policy, the insurer bears the burden of proving the applicability of an exclusion that permits it to deny coverage. Once the insurer proves the applicability of an exclusion, the burden then shifts back to the insured to demonstrate that it has coverage under an exception to the exclusion. *Canutillo Indep. Sch. Dist. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 99 F.3d 695, 701 (5th Cir.1996); *Venture Encoding Serv., Inc.*, 107 S.W.3d at 733; *Telepak v. United Servs. Auto. Ass'n*, 887 S.W.2d 506, 507–08 (Tex.App.-San Antonio 1994, writ denied).

■ The interpretation of an insurance contract is governed by the general rules of contract interpretation. *Texas Farmers Ins. Co. v. Murphy*, 996 S.W.2d 873, 879 (Tex.1999). Our primary concern is to ascertain the true intentions of the parties as expressed in the written instrument. *Lenape Res. Corp. v. Tennessee Gas Pipeline Co.*, 925 S.W.2d 565, 573 (Tex.1996). If a contract can be given only one reasonable meaning, it is not ambiguous and will be enforced as written. *State Farm Fire & Cas. Co. v. Vaughan*, 968 S.W.2d 931, 933 (Tex.1998). On the other hand, if a contract is susceptible to two or more reasonable interpretations, it is ambiguous. *Kelley–Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998). Whether a contract is ambiguous is a question of law for the court to decide by examining the entire contract in light of the existing circumstances at the time the contract was entered. *Id.*

■ "Where an *ambiguity* involves an exclusionary provision of an insurance policy, we 'must adopt the construction . . . urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent.'" *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex.1998) (quoting *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex.1991)) (emphasis added). Thus,

courts employ the doctrine of *contra proferentem*, or construing a contract term against the insurer in favor of coverage, only when construing an ambiguous policy provision. *Evergreen Nat'l Indem. Co. v. Tan It All, Inc.*, 111 S.W.3d 669, 676 (Tex. App.-Austin 2003, no. pet.); *GTE Mobilnet of S. Tex. Ltd. Partnership v. Telecell Cellular, Inc.*, 955 S.W.2d 286, 291 (Tex.App.-Houston [1st Dist.] 1997, writ denied); *see also American States Ins. Co. v. Bailey*, 133 F.3d 363, 369 (5th Cir.1998) (explaining policy exclusions are construed against insurer and in favor of the insured only when ambiguity exists). Comsys has not asserted any ambiguity in any policy provision.

### Overcharges

In its petition, TSLCI sought damages for overcharging. The petition alleges that "COMSYS gave [TSLCI] an estimate of the cost for completing this project, which was approximately $89,000." Twin City asserts TSLCI's claim for damages for overcharging relates to charges in excess of the $89,000 estimate Comsys gave TSLCI prior to the commencement of the project and, therefore, is excluded under section I.2.l of the policy. Section I.2.l excludes:

Any injury or damage arising out of the failure to:

* * *

(2) Meet the terms of cost estimates or guarantees, or any delays in the performance of any contract or agreement . . .

We agree that section I.2.l excludes such damages because it covers damages "arising out of the failure to ... meet the terms of cost estimates...."

### Loss of Goodwill

In its petition, TSLCI also sought damages for loss of goodwill.[5] Twin City contends damages for loss of goodwill are excluded under section I.2.k, which excludes:[6]

Any injury or damage arising out of loss of customer faith or acceptance or any cost incurred to regain customer approval.

Comsys argues section I.2.k applies to the *insured's* own loss of customer goodwill, not the client's (TSLCI) loss of good will. However, the policy expressly purports to be a "claims made" policy specifically guaranteeing indemnification for claims made "against [the] insured." Thus, Comsys' construction of section I.2.k creates a redundancy in the policy provisions. We find a plain reading of section I.2.k, in context with the entire policy, establishes

---

**5.** Relying on TSLCI's answers to interrogatories propounded by Comsys in the underlying suit, Comsys asserts TSLCI was not seeking damages for loss of goodwill. Contrary to this assertion, Comsys asked TSLCI in Interrogatory No. 11 whether TSLCI had "lost any good will due to the incident made the basis[.]" TSLCI answered:

Objection. Discovery is on-going in this dispute and Plaintiff reserves its right to supplement this response. Subject to this objection, please see Plaintiff's response to Interrogatory No. 10.

TSLCI clearly reserved its right to supplement its response on damages for loss of goodwill.

Furthermore, in its petition, TSLCI specifically listed loss of goodwill among the myriad damages it was seeking.

**6.** Comsys mistakenly states that Twin City is relying on section I.2.k to exclude damages for loss of revenue. In its appellate brief, Twin City specifically states section I.2.k excludes goodwill damages. In its motion for summary judgment, Twin City asserted "[d]amages for delay costs, overcharging, loss of revenue, and loss of goodwill are expressly excluded under paragraphs (g), (k), (*l*) and (n)."

that it excludes damages for the client's loss of goodwill, not the insured's loss of goodwill. Had the exclusion been intended to exclude solely the insured's damages for loss of goodwill, it could have specifically stated *"Your* (insured) injury or damage arising of loss of customer faith...." as was expressly stated in section I.2.g of the policy, which specifically excluded *"Your* cost of doing business." [7]

### Loss of Revenue

■ TSLCI also sought damages for loss of revenue. In its petition, TSLCI alleged that "On or about May 28, 1997, [TSLCI] attempted to switch to the 'online' system developed by COMSYS. The attempted change-over resulted in a 'data processing nightmare,' the loss of data, customers and revenue." Section I.2.n excludes:

> Any injury or damage claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:
>
> (1) "Your product;"
>
> (2) "Your work;" or
>
> (3) Any property of which "your product" or "your work" forms a part;
>
> if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Twin City argues TSLCI was not able to use the system because of defects. Comsys contends section I.2.n requires that the product or work be "withdrawn or recalled" from use as provided under subsection three. Comsys explains that TSLCI's allegations for lost revenue were not based

on "down time," but rather its losses were caused by the system while it was in use, *i.e.,* delays in the system, and subsequent loss of production by its sales personnel, not from the "withdrawal" or "recall" of its product or work. We are unable to discern from the summary judgment record whether TSLCI's claim for damages are due to "loss of use" of "(1) '[Comsys'] product;' (2) '[Comsys'] work;' or (3) Any property of which '[Comsys'] product' or '[Comsys'] work' forms a part; if such product, work or property is withdrawn or recalled ... from use...." Twin City did not satisfy its burden to establish that TSLCI's claim for loss of revenue damages is excluded under the policy and, thus, this issue must be remanded to the trial court for further consideration.

### Costs of Doing Business

■ TSLCI's petition also alleged that Comsys "charged Plaintiff in excess of $100,000.00 to repair a system it had defectively designed, developed and implemented." Twin City asserts such damages are excluded under section I.2.g, which excludes:

> *Your* costs of doing business. This includes the costs or expenses of performing additional services to correct deficiencies in the original services you performed.[8]

Twin City argues the policy excludes costs related to TSLCI's claim for damages associated with Comsys' attempts to repair the system it had developed for TSLCI because such damages are related to "[Comsys'] costs of doing business." Comsys, on the other hand, argues section I.2.g excludes only the insured's own expenses incurred in making repairs to its own work; therefore, TSLCI's costs incurred in having the defective work repaired, even

---

7. Emphasis added.

8. Emphasis added.

if such repair work is performed by the insured (Comsys) is not excluded.

Exclusions like the one referenced here are commonly referred to as "business risk" exclusions. *T.C. Bateson Const. Co. v. Lumbermens Mut. Cas. Co.,* 784 S.W.2d 692, 695 (Tex.App.-Houston [14th Dist.] 1989, writ denied). Such exclusions are designed to protect insurers from the insured's attempt to recover funds to correct deficiencies caused by the insured's questionable performance. The exclusion reflects the insurers' belief that the cost of not performing well is a cost of doing business and is not part of the risk-sharing scheme for which the policy has been written. *Id.*

Here, TSLCI's claim for $100,000, which reflects Comsys' attempts to correct a defectively designed product, represents Comsys' cost of doing business. Accordingly, the claim is excluded from coverage by the terms of the policy.

### Unpaid Work

■ Twin City also contends the $114,000 representing unpaid work Comsys had performed for TSLCI and for which Comsys sought to recover from TSLCI in its counterclaim, is excluded under section I.2.g as "[Comsys'] cost of doing business." We agree. Comsys' claim for unpaid bills is undoubtedly the cost of its doing business and is excluded by section I.2.g of the policy.

### Express and Implied Warranties

■ With respect to its claims for breach of express and implied warranties, TSLCI alleged the following in its petition:

Despite the representations and warranties made by Defendant COMSYS concerning its competence and efficiency, Defendant did not perform its obligations under the Project Charter in a good and workmanlike manner ... De-fendant's failure to properly perform the work set forth in the Project Charter and the repairs ordered constitutes a breach of contract and breach of express and implied warranties.... Defendant breached the express warranties made about their [sic] services, goods and work....

Twin City asserts the policy excludes TSLCI's breach of express and implied warranty claims. Section I.2.y excludes:

y. Any "claim" arising from the breach of any express warranty or guarantee excluding representations made at any time with respect to fitness, quality, durability, performance or use of "your work" or "your product."

Section I.2.1 excludes:

1. Any injury or damage arising out of the failure to:

\* \* \*

(2) Meet the terms of cost estimates or guarantees, or any delays in the performance of any contract or agreement;....

■ We find TSLCI's claim for breach of express warranty is expressly covered by the policy because the policy exclusion relied upon by Twin City specifically excepts claims regarding the fitness, quality, durability, performance, or use of Comsys' product. This is precisely the claim made by TSLCI; thus, it is excepted from the exclusion. Moreover, while the policy excludes claims for failure to meet cost guarantees, we cannot reasonably construe this provision as an exclusion of either express or implied warranty claims relating to Comsys' warranties regarding its services, goods, or workmanship.

### *"Knowing" DTPA Violations*

██ In support of its claim for additional damages under the DTPA, TSLCI alleged that Comsys "knowingly" violated the DTPA. Twin City asserts such knowing conduct is excluded from the policy's coverage. Sections I.2.a and c of the policy exclude:

a. Intentional acts, errors or omissions by or at the direction of the insured.

\* \* \*

c. Any injury or damage arising out of willful, dishonest, fraudulent, criminal or malicious acts, errors or omissions by or at the direction of the insured.

A plaintiff is entitled to additional damages under the DTPA if it establishes that a violation was committed "knowingly." TEX. BUS. & COM.CODE ANN. § 17.50(b)(1) (Vernon 2002). Here, the policy excludes (1) "intentional" wrongdoing and (2) "willful, dishonest, fraudulent, or criminal" wrongdoing.

"Intentionally" is defined under the DTPA as:

actual awareness of the falsity, deception, or unfairness of the act or practice, or the condition, defect, or failure constituting a breach of warranty giving rise to the consumer's claim, coupled with the specific *intent* that the consumer act in detrimental reliance on the falsity or deception or in detrimental ignorance of the unfairness.

TEX. BUS. & COM.CODE ANN. § 17.45(13) (Vernon 2002) (emphasis added). As contrasted with "intentionally," "knowingly" is a lower mental state. *See* COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES PJC 102.21 (2002) (explaining that "difference between 'knowledge' and 'intent' is that 'intent' requires the defendant specifically intended that the consumer act in detrimental reli-

ance"). Thus, DTPA claims are not excluded under Section I.2.a of the policy.

██ However, Section I.2.c also excludes "dishonest, fraudulent, criminal or malicious acts." Thus, this section excludes specific types of conduct rather than mental states (as in Section I.2.a of the policy). As in criminal law, several mental states have been recognized and distinguished. For example, the terms "gross negligence," "knowing," "willful," and "intentional" lie on an escalating continuum with "gross negligence" being the lowest mental state and "intentional" being the highest. *Luna v. North Star Dodge Sales, Inc.*, 667 S.W.2d 115, 118 (Tex.1984). For purposes of the DTPA, "knowingly" is defined as "actual awareness, at the time of the act or practice complained of, of the falsity, deception, or unfairness of the act or practice giving rise to the consumer's claim...." TEX. BUS. & COM.CODE ANN. § 17.45(9) (Vernon 2002). The Texas Supreme Court has noted that actual awareness does not mean "merely that a person knows what he is doing; rather, it means that a person knows that what he is doing is false, deceptive, or unfair." *St. Paul Surplus Lines Ins. Co. v. Dal-Worth Tank Co.*, 974 S.W.2d 51, 54 (Tex.1998). "In other words, a person must think to himself at some point, 'Yes, I know this is false, deceptive, or unfair to him, but I'm going to do it anyway.'" *Id.* Moreover, dishonest, fraudulent, and criminal acts may, and frequently are, committed "knowingly." Accordingly, we find, TSLCI's DTPA claims are excluded under Section I.2.c of the policy.

### *Punitive Damages*

██ Claiming gross negligence, TSLCI also sought punitive damages for actions committed with malice. Twin City asserts punitive damages are also excluded

under the policy. "Malice" for the purpose of recovering punitive damages means:

(A) a *specific intent* by the defendant to cause substantial injury to the claimant; or

(B) an act or omission:

(i) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

(ii) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

TEX. CIV. PRAC. & REM.CODE ANN. § 41.001(7) (Vernon 1997) (emphasis added); *see also Hartford Cas. Ins. Co. v. Powell*, 19 F.Supp.2d 678, 682 (N.D.Tex.1998) (explaining that Texas law requires proof of conduct "closely akin to an intention to harm"). Because the policy excludes intentional acts, we find damages for actions committed with malice are excluded under section I.2.a of the policy. We further conclude punitive damages supported by malice are excluded by section I.2.c, which excludes "malicious acts."

In light of our finding that some of TSLCI's claims are covered under the policy and others are excluded, Twin City contends Comsys failed to meet its burden to segregate the damages and, thus, is precluded from any recovery under the policy. An insured is not entitled to recover under an insurance policy unless it proves its damages are covered by the policy. *Employers Cas. Co. v. Block*, 744 S.W.2d 940, 944 (Tex.1988), *overruled in part on other grounds by State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696 (Tex. 1996); *Wallis v. United Servs. Auto. Ass'n*, 2 S.W.3d 300, 303 (Tex.App.-San Antonio 1999, pet. denied). Under the doctrine of concurrent causes, when covered and noncovered perils combine to create a loss, the insured is entitled to recover that portion of the damage caused solely by the covered peril. *Allison v. Fire Ins. Exchange*, 98 S.W.3d 227, 258 (Tex.App.-Austin 2002, no pet.); *State Farm Fire & Cas. Co. v. Rodriguez*, 88 S.W.3d 313, 320–21 (Tex. App.-San Antonio 2002, pet. denied); *Wallis*, 2 S.W.3d at 302–03. The doctrine of concurrent causation is not an affirmative defense or an avoidance issue; instead, it is a rule embodying the basic principle that insureds are not entitled to recover under their insurance policies unless they prove their damage is covered by the policy. *Allison*, 98 S.W.3d at 258. The insured must present some evidence upon which the jury can allocate the damages attributable to the covered peril. *Id.* at 258–59. Because the insured can recover only for covered events, the burden of segregating the damage attributable solely to the covered event is a coverage issue for which the insured carries the burden of proof. *Rodriguez*, 88 S.W.3d at 321; *Wallis*, 2 S.W.3d at 303. Otherwise, failure to segregate covered and noncovered perils is fatal to recovery. *Allison*, 98 S.W.3d at 259.

Comsys, however, argues it had no duty to segregate damages in this case, *i.e.*, in a third-party liability insurance context. In *Warrilow v. Norrell*, the Corpus Christi Court of Appeals explained the difference between liability under a first-party policy and a third-party policy:

In Texas, if one force is covered and one force is excluded, the insured must show that the property damage was caused solely by the insured force, or he must separate the damage cause by the insured peril from that caused by the excluded peril.

* * *

[I]n the third-party liability insurance context, the right to coverage is established by traditional tort concepts of fault, proximate cause, and duty. By insuring for personal liability and agreeing to cover the insured for his own negligence, the insurer agrees to cover the insured for a broader spectrum of risks. Thus, the focus is on the insured's legal obligation to pay for an injury or damage arising out of a certain occurrence, and coverage should extend to an insured risk, negligence, which constitutes a concurrent proximate cause of the injury. By finding coverage, for an injury resulting from the insured's negligence, the reasonable expectations of the parties to the insurance contract are not frustrated. Our application of *Partridge*[9] does not expand the insurer's potential liability, as would be the case in the first-party property insurance context.

791 S.W.2d 515, 527–28 (Tex.App.-Corpus Christi 1989, writ denied) (citations omitted).

Comsys urges us to adopt the position taken in *Warrilow*. Twin City, on the other hand, argues the doctrine of concurrent causes is not limited to first party insurance cases, but has been applied to third party insurance cases. We agree. The greater weight of authority supports this conclusion. *See, e.g., Enserch Corp. v. Shand Morahan & Co.*, 952 F.2d 1485, 1494 (5th Cir.1992) (reversing and remanding for findings to make necessary apportionment, explaining that "we cannot allow an insured to settle allegations against it (some of which might be covered by its insurance, some of which might not) for its policy limits and then seek full indemnification from its insurer when some of that settled liability may be for acts clearly excluded by that policy"); *Society of Prof'ls in Dispute Resolution, Inc. v. Mt. Airy Ins. Co.*, 1997 WL 711446, at *7 (N.D.Tex. Nov.7, 1997) (finding insurer was not precluded from contesting coverage of certain claims for purposes of apportionment of settlement amounts where settlement did not address whether any part of liability was covered by policy); *Willcox v. American Home Assur. Co.*, 900 F.Supp. 850, 856 (S.D.Tex.1995) (stating that damages recited in judgment or settlement of underlying lawsuit must be apportioned between covered and noncovered claims); *Winn v. Continental Cas. Co.*, 494 S.W.2d 601, 605 (Tex.Civ.App.-Tyler 1973, no writ) (finding no evidence indicating attempt on appellant's part to apportion settlement between alleged civil coverage and admitted criminal noncoverage where appellant had burden as insured).

■■■ Twin City maintains that because neither the memorandum of agreement nor the final settlement agreement between TSLCI and Comsys contains an apportionment of the settlement payment among the various claims and measures of damages, Comsys has failed to meet its burden. A review of the memorandum agreement and final settlement agreement reflects that neither apportions the settlement between covered and noncovered claims and damages.

---

9. *State Farm Mut. Auto. Ins. Co. v. Partridge*, 10 Cal.3d 94, 109 Cal.Rptr. 811, 514 P.2d 123 (1973) (involving concurrent causation as it applied to third-party liability insurance coverage). The California Supreme Court held "that coverage under a liability insurance policy is equally available to an insured whenever an insured risk constitutes simply a con-current proximate cause of the injuries." *Id.* at 104–05, 109 Cal.Rptr. 811, 514 P.2d at 130. The *Partridge* court reasoned "[t]hat multiple causes may have effectuated the loss does not negate any single cause; that multiple acts concurred in the infliction of injury does not nullify any single contributory act." *Id.* at 105, 109 Cal.Rptr. 811, 514 P.2d at 130–31.

However, Comsys offered some evidence of allocation of damages. In his affidavit, Amir Alavi, senior vice president of Comsys, explained that before mediation, TSLCI's expert issued an additional opinion regarding Comsys' negligence with regard to work performed on the new computer system. On the day prior to mediation, Alavi learned that Comsys' expert was in agreement with TSLCI's expert's opinion and was going to testify to that effect at deposition scheduled for the week following mediation. Alavi explained that "[i]n settling this suit, I was mindful of TSLCI's new expert opinion that Comsys was negligent, and believed that the settlement demand would substantially increase if the case was not settled at mediation." Also, in its answers to interrogatories propounded in the underlying suit, TSLCI set forth amounts for some of the damages it sought. We conclude Comsys has raised a fact issue with regard to allocation of damages in the settlement. *See Enserch Corp.*, 952 F.2d at 1494 (explaining that there were several possible sources in allocating claimant's damages such as allegations contained in complaint in underlying lawsuit, and facts that would have been subject of lawsuit had it been tried).

Accordingly, to the extent Comsys contends that no policy exclusions applied to TSLCI's claims, the contention is overruled. However, we find that *some* of TSLCI's claims are covered under the policy. Further, because some evidence was offered regarding the allocation of damages under the settlement agreement, a fact issue exists as to whether the sum of the covered claims exceeds the $250,000 self-insured retention. Thus, summary judgment was inappropriate.

## BREACH OF STATUTORY DUTY

In its third point of error, Comsys claims Twin City was not entitled to summary judgment because it breached its duty under Article 21.21 of the Texas Insurance Code to provide a coverage opinion and reservation of rights letter within a reasonable amount of time. As we have previously stated, because Twin City had no duty to defend (and it never assumed any such duty), it had no duty to decide coverage until after an adjudication of TSLCI's claims whether by settlement or a judgment. Thus, to the extent Comsys contends Twin City was obliged to render a coverage opinion prior to settlement that contention is overruled. However, Twin City was obliged to decide coverage at or within a reasonable time after the settlement. We find a month-and-a-half delay between settlement and a coverage opinion is arguably unreasonable and raises a fact issue regarding whether Twin City breached its duty to provide a coverage opinion and/or reservation of rights letter under Article 21.21 of the Texas Insurance Code. Accordingly, appellant's third point of error is sustained.

## SETTLEMENT WITHOUT CONSENT

In its fourth point of error, Comsys contends the trial court erred in finding it settled without Twin City's consent. We have already held there is a fact issue regarding whether Twin City waived the "no-consent" clause in the policy. Accordingly, appellant's fourth point of error is sustained.

## SUMMARY

In summary, Twin City sought summary judgment on the grounds that (1) Comsys forfeited its right to recover under the policy when it settled the lawsuit with TSLCI without Twin City's consent, (2) many or all of TSLCI's claims were excluded under the terms of the policy, (3) Comsys failed to meet its burden of identi-

fying what portion of the settlement, if any, was attributable to claims covered by the policy, and (4) Comsys was not entitled to recover the debt it "forgave" as part of the settlement with TSLCI. Twin City's motion was granted. We find, however, there is a fact issue as to whether Comsys forfeited its right to recover by settling the lawsuit without Twin City's consent and/or whether Twin City was prejudiced by the settlement without its consent. Thus, as to this issue, the trial court's judgment is reversed and remanded. We agree with Twin City's assertion that the policy excludes coverage for TSLCI's claims against Comsys for overcharging, loss of goodwill, knowing DTPA violations, and punitive damages supported by malice. We find no policy exclusion, however, for claims arising from a breach of express or implied warranties. We further agree with Twin City that the burden of identifying the portions of the settlement attributable to claims covered by the policy fell upon Comsys, but we also find Comsys presented some evidence on this question creating a fact issue precluding summary judgment. Thus, as to this issue, the trial court's judgment is reversed and remanded. Finally, we agree with Twin City's assertion that Comsys was not entitled to recover under the policy for debts it allegedly forgave TSLCI.

Comsys sought partial summary judgment on the grounds that (1) it was "legally obligated to pay" damages to TSLCI as a result of the settlement, (2) Twin City breached the insurance contract by failing to pay damages to Comsys, (3) the "no-consent" settlement clause was unenforceable, (4) Twin City is estopped from asserting the "no-consent" clause or has waived the same, and (5) Twin City waived its right to assert policy defenses, *i.e.*, exclusions. The trial court denied Comsys' motion for summary judgment. We find, however, that a settlement (like a judgment) constitutes a legal obligation to pay. Further we find there is a fact issue as to (1) whether Twin City breached the insurance contract, (2) whether the "no-consent" clause is enforceable, and (3) whether Twin City is estopped from asserting or has waived the no settlement clause in the policy. Finally, we find Twin City did not waive its right to assert exclusions named in the policy.

Accordingly, fact issues precluding summary judgment are manifest in the summary judgment record regarding (1) the enforceability of the "no-consent" clause of the policy, (2) what portions of the settlement are attributable to claims covered under the policy, and (3) whether Twin City breached the insurance contract. Thus, the judgment of the trial court is reversed and the cause is remanded to the trial court for further proceedings consistent with this opinion.

Chief Justice BRISTER not participating.