Reversed and Remanded and Memorandum Opinion filed October 20, 2005









Reversed and Remanded and
Memorandum Opinion filed October 20, 2005.

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO. 14-04-00255-CV

_______________

 

JOHN T. TINSLEY, Appellant

 

V.

 

STATE FARM LLOYDS, Appellee

                                                                                                                                            


On Appeal from the 151st District Court

Harris County, Texas

Trial Court Cause No. 02‑28487

                                                                                                                                            


 

M E M O R A N D U M   O P I N I O N








In this
insurance coverage dispute, appellant John T. Tinsley challenges the trial
court=s summary judgment in favor of
appellee State Farm Lloyds,[1]
arguing the trial court erred (1) because genuine issues of material fact exist
as to each of his causes of action, and (2) by impliedly overruling his special
exceptions to State Farm=s summary judgment motion. Because we conclude that genuine
issues of material fact exist regarding whether the damage to Tinsley=s home is covered under his policy
and on Tinsley=s extra-contractual claims, we
reverse the trial court=s summary judgment and remand for proceedings consistent with
this opinion.

I.  Factual and Procedural
Background

In
December 2000, Tinsley discovered cracks in the drywall and brick exterior of
his home, and other indications of foundation problems.  He contacted his insurer, State Farm Lloyds,
and made a claim under his homeowner=s policy on January 2, 2001.  Shortly thereafter, in accordance with a
request from State Farm, Courtney Plumbing conducted leak detection tests at
Tinsley=s residence.  Based on its static testing, Courtney
discovered the following six leaks within the plumbing system: 

(1) in the main trunk line underlying
bedroom No. 1

(2) in an abandoned kitchen and washer
drain line

(3) on the shower riser to the strainer in
bathroom No. 1

(4) in the branch drain to the lavatory in
bathroom No. 1

(5) in the main trunk line underlying
bedroom No. 2

(6) the toilet drain in bathroom No. 2[2]

 








Courtney also performed
three flow tests on the following fixtures: the shower in bathroom No. 1 (leak
number 3 above), the toilet in bathroom No. 2 (leak number 6), and the lavatory
in bathroom No. 1 (leak number 4).  The
flow tests indicated no measurable loss of water.[3]  The plumbing tests conducted by Courtney were
the only plumbing tests conducted at the residence.

Under
Tinsley=s homeowner=s policy, damage to his residence
resulting from foundation movement is covered to the extent the damage results
from an Aaccidental discharge, leakage, or
overflow of water or steam from within a plumbing, heating or air conditioning
system or household appliance.@  Thus, following
Courtney=s testing, State Farm hired Charles
Mgbeike with MCA Engineering to conduct an inspection to determine if the leaks
caused or contributed to the foundation movement.  Based on Courtney=s findings and his inspection,
Mgbeike concluded in his report dated March 1, 2001, that the foundation had
moved due to seasonal changes in the moisture content of the soil, the movement
prompted past foundation repairs, but A[a]pparently, the foundation was not
adequately supported.@  Mgbeike also stated
that A[a]lthough some leaks were found, the
flow tests revealed no measurable loss at the leak locations.@ 
Further, Mgebeike noted that the elevation survey he conducted revealed
no measurable upward movement, or heave, at the leak locations, indicating the
sewer leaks had not caused the foundation=s movement.[4]  Quoting from Mgebeike=s report, State Farm sent a letter to
Tinsley, dated March 13, 2001, denying his claim.  








Subsequently,
Tinsley requested that soil sampling be done and in May 2001, Mgbeike hired
A&R Engineering and Testing, Inc. to conduct the soil testing.[5]  Based on A&R=s soil sample report, Mgbeike issued
another report to State Farm in which he stated that Tinsley=s residence had a history of
foundation problems, noted the previous owner had perimeter piers installed,
and concluded that the Aplumbing leaks did not cause the re-settling of the existing
piers along the front and left walls.@[6] 

In
August 2001, Tinsley hired Taylor Sealy, with Sealy Engineering, to conduct an
inspection of the residence.  In addition
to Mgbeike=s report, Sealy also relied on
Courtney=s testing and an inspection report
prepared in 1999 by Newman Inspectors and Engineers Inc., apparently prepared
in connection with Tinsley=s purchase of the residence. 
Sealy concluded that the vast majority of the foundation damage was due
to the underslab sewer leaks and not to the surrounding trees.  He also opined that moisture withdrawal from
the soil was not the cause of the damage, contrary to Mgebeike=s conclusion, because the damage was
occurring at a rapid rate despite recent heavy rainfall.  

Tinsley
sued State Farm, alleging breach of contract, breach of the duty of good faith
and fair dealing, and violations of the Texas Insurance Code and the Texas
Deceptive Trade Practices Act (ADTPA@).  State Farm moved
for summary judgment on both traditional and no-evidence grounds.  The trial court granted summary judgment, and
this appeal ensued.

II.  Discussion

In two
issues, Tinsley claims the trial court improperly granted summary judgment
because genuine issues of material fact exist on each element of his causes of
action, and that the trial court erred in impliedly overruling his special
exceptions to State Farm=s motion for summary judgment.  We first address Tinsley=s special exceptions issue.








A.        Special Exceptions to the Summary
Judgment Motion

Tinsley
filed special exceptions to State Farm=s motion, claiming State Farm failed
to specify whether it was a traditional motion, a no-evidence motion, or both,
and further, that as a no-evidence motion, State Farm failed to challenge
specific elements of Tinsley=s causes of action.  On
appeal, Tinsley makes this same argument.

Under
Rule 166a(i), a no‑evidence summary judgment motion must Astate the elements as to which there
is no evidence.@  Tex. R. Civ. P. 166a(i).  This requirement prohibits conclusory no‑evidence
motions or general no‑evidence challenges to the non-movant=s case.  See id. cmt.; Cuyler v.
Minns, 60 S.W.3d 209, 212 (Tex. App.CHouston [14th Dist.] 2001, pet.
denied).








In its motion,
State Farm asserted both traditional and no-evidence grounds for summary
judgment.  Regarding Tinsley=s breach of contract action, State
Farm asserted there was no evidence that Tinsley=s claim for foundation coverage was
in fact covered under his insurance policy. 
Specifically, State Farm stated, A[t]here is no evidence that the
foundation damage alleged by [] Tinsley was caused by accidental discharge,
leakage or overflow of water or seen from within a plumbing, heating or air
conditioning system.@  As noted, if the
foundation damage was not caused by an accidental discharge, leakage or
overflow, there would be no coverage under the policy and consequently, no
breach of the insurance contract.  See
Transp. Ins. Co. v. Moriel, 879 S.W.2d 10, 17 (Tex. 1994) (noting that
nonpayment of a covered claim may be a breach of contract).  Thus, State Farm asserted Tinsley had no
evidence that the damage to his home was caused by a plumbing leak, an element
of his breach-of-contract action.  We
conclude that State Farm=s no-evidence challenge to Tinsley=s breach-of-contract claim was
sufficiently specific.[7]  See Tex.
R. Civ. P. 166a(i).  We overrule
Tinsley=s second appellate issue, and examine
whether summary judgment in State Farm=s favor was error. 

B.        Summary Judgment Standard of Review

The
standard of review for a traditional summary judgment is well established.  See Schneider Nat=l Carriers, Inc. v. Bates, 147 S.W.3d 264, 290 (Tex.
2004).  We review a summary judgment
under a de novo standard, viewing all evidence in a light favorable to the
non-movant and indulging every reasonable inference in his favor.  Provident Life & Accident Ins. Co. v.
Knott, 128 S.W.3d 211, 215 (Tex. 2003). 


The
party moving for summary judgment bears the burden to show that no genuine
issue of material fact exists and that it is entitled to judgment as a matter
of law.  See Tex. R. Civ. P. 166a(c); Provident
Life, 128 S.W.3d at 215B16.  Summary judgment
for a defendant is proper only when the defendant negates at least one element
of each of the plaintiff=s theories of recovery, or pleads and conclusively
establishes each element of an affirmative defense.  Sci. Spectrum, Inc. v. Martinez, 941
S.W.2d 910, 911 (Tex. 1997). 








A no‑evidence
summary judgment is essentially a pretrial directed verdict, and we apply the
same legal sufficiency standard in reviewing a no‑evidence summary
judgment as we apply in reviewing a directed verdict.  King Ranch, Inc. v. Chapman, 118
S.W.3d 742, 750B51 (Tex. 2003).  We
sustain a no-evidence issue when (a) there is a complete absence of evidence of
a vital fact, (b) the court is barred by rules of law or of evidence from
giving weight to the only evidence offered to prove a vital fact, (c) the
evidence offered to prove a vital fact is no more than a mere scintilla, or (d)
the evidence conclusively establishes the opposite of the vital fact.  Id. at 751.  If the non-movant brings forth more than a
scintilla of probative evidence raising a genuine issue of material fact, a no‑evidence
summary judgment is improperly granted.  Id.;
see Tex. R. Civ. P. 166a(i).  Less than a scintilla of evidence exists when
the evidence offered is Aso weak as to do no more than create a mere surmise or
suspicion@ of a fact.  King Ranch, 118 S.W.3d at 751 (quoting
Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983)).  More than a scintilla of evidence exists when
it Arises to a level that would enable
reasonable and fair‑minded people to differ in their conclusions.@ 
Id. (quoting Merrell Dow Pharms., Inc. v. Havner, 953
S.W.2d 706, 711 (Tex. 1997)). 

When the
trial court=s order does not specify the grounds
for its summary judgment, we will affirm the judgment if any of the theories
presented to the trial court are meritorious and preserved for appeal.  Provident Life, 128 S.W.3d at 216.

C.        State Farm=s Summary Judgment Grounds

There is
no dispute between the parties that Courtney Plumbing conducted the only
plumbing tests on the residence, nor do they dispute the validity of Courtney=s report that six leaks were detected
in the plumbing system.  Also,
acknowledging Balandran v. Safeco Ins. Co., State Farm agrees that, if
the damage to Tinsley=s home was caused by the sewer leaks, Tinsley=s policy provides coverage for the
damages.  See 972 S.W.2d 738, 742
(Tex. 1998).[8]  We begin with Tinsley=s contractual claim.

1.         The Contractual Claim 

In
response to State Farm=s no-evidence challenge, Tinsley provided a report prepared
by Sealy, a registered professional engineer, which stated in pertinent part
the following:

It is my opinion that all of the foundation related
damage observed in the house with the exception of that in the vicinity of the
northwest corner within range of the pecan tree,[[9]]
is due to the under slab sewer leaks and not due to the effect of the
surrounding trees or weather conditions. 








In his report, Sealy also
stated he observed damage to the home and noted that Mgebeike=s report had indicated there was no
significant damage.  This indicated to
Sealy that the damage was occurring at a fairly rapid rate.  Further, Sealy asserted that when the home
was inspected in 1999, Newman Engineering stated that the maximum slab height
variation was 2.5 inches; in Mgebeike=s report, the variation was listed as
4.32 inches, and Taylor had measured a variation of 4.8 inches.  The discrepancies between these variations
again indicated to Sealy that the amount of settlement was occurring at a
fairly rapid rate.  He opined that the
rapid rate of settlement, despite heavy rainfall, further evidenced that
moisture withdrawal from the soil was not the cause of the foundation=s settlement.[10]  Sealy=s statements controvert Mgebeike=s conclusions regarding the cause of
the foundation movement.  

Included
in Tinsley=s evidence was a letter from Sealy
written in response to Mgebeike=s critique of Sealy=s conclusions.[11]  Sealy stated that the sewer leaks had caused
the foundation movement by washing away the sub-slab fill, which created a void
underneath the slab.  He suggested that
under these circumstances, a flow test would not detect the problem.  Attached to his letter were copies of
publications to support his contention. 
Tinsley also argued that the invoices from Village Plumbing, indicating
they had cleaned mud out of Tinsley=s sewer lines on several occasions,
also bolstered Sealy=s conclusions concerning the leaks.  Further, Tinsley furnished Mgebeike=s deposition testimony in which he
stated that the foundation=s movement was caused primarily by the drying of the soil,
but when questioned by Tinsley=s counsel as to the type of research he conducted to
determine the amount of rainfall in the two years that Tinsley owned the home,
Mgebeike stated he had done no specific study and that it was common knowledge
Texas experienced a drought in 1999 and 2000.

 








In sum,
we conclude that Tinsley=s summary judgment evidence constitutes more than a scintilla
of evidence that the sewer leaks may have caused the damages to Tinsley=s residence, raising a genuine fact
issue on this element of Tinsley=s contract claim.

State
Farm, however, argues that Tinsley failed to provide evidence of Aany measurable loss of water from the
plumbing system.@  In fact, throughout
the record and in its brief, State Farm repeatedly asserts that there is no
evidence the damage was caused by sewer leaks because the plumbing tests
revealed Ano measurable loss of water.@ 
There is no evidence in the record, however, to suggest that Tinsley=s proof of causation in this case was
limited only to establishing a measurable loss of water through flow
tests.  Further, in his additional
report, Sealy indicates the sewer leaks in this case would not necessarily be
detected through a flow test.  

It is
undisputed that Courtney discovered six leaks within the plumbing system
through static testing, two of which are in the main trunk lines.  There is nothing in the record to  demonstrate 
that Ano measurable loss of water@ through the fixtures tested equates
to no plumbing leaks within the entire plumbing system, nor any evidence
suggesting that flow tests are definitive in determining causation in a case
such as this.  It is true that, during
his deposition, Sealy agreed with State Farm=s counsel that Aflow testing most closely simulates
everyday usage@ and also agreed that the flow tests
conducted by Courtney revealed no measurable loss of water.  But, as Tinsley noted, this is not to say
there were no leaks within the plumbing system that could have caused the
foundation movement.  Cf. United
Servs. Auto. Ass=n v. Gordon, 103 S.W.3d 436, 439 (Tex. App.CSan Antonio 2002, no pet.)
(concluding under similar circumstances that whether Aevidence of plumbing leaks based on
hydrostatic tests should be rejected because those tests do not reflect normal
conditions is a fact question for the jury.@). 








State
Farm further argues that in his report, Sealy stated his theory of causation
was rainwater migrating underneath the foundation and, because the policy does
not cover that type of peril, there is no coverage and no breach of contract. 

Sealy=s report contained the following:

The [Mgebeike] report states that sewer leaks can only
result in heave of foundation and if heave is not present then the sewer leaks
did not cause the problem.  It has been
my experience that the sand fill which usually consists of 4B5 inches of sand underneath the
foundation is readily capable of being washed into a damaged sewer line from
rain water flowing from the perimeter of the house. It was also stated by the
[Mgebeike] report that flow tests showed no loss of water and therefor [sic]
the sewer leaks could not have affected the foundation in a significant
way.  This neglects the affect of the
previously mentioned rain water which obviously has been running underneath the
foundation . . . . Water does not flow under foundations under ordinary
conditions unless sewer leaks are present to which the water can flow.  A sewer leak must be present for settlement
to occur due to this cause.  

Considering the entire
report, we cannot say that Sealy=s theory of the cause of the
foundation movement was rainwater.  In a
subsequent letter, Sealy stated that the holes along the perimeter of the
foundation, which allowed the surface water to migrate down, were due to the
holes in the sewer lines, noting that if the rainwater had no sewer leaks to
seep into, it would not migrate under the foundation. 

In its
reply to Tinsley=s response to the summary judgment motion, State Farm
included additional deposition testimony from Sealy and argued this testimony
demonstrated Sealy=s theory that Athe problems at the Tinsley residence
was not water leaking from the plumbing system but rather particles going into
the pipes.@ 
Sealy=s testimony, in response to
questioning by State Farm=s counsel, follows:  

Q.        So but
for the rain, there shouldn=t be this problem at the house?

A.        And the
rain and the sewer breaks.  Because one
without the other isn=t going toCisn=t going to happen. 


Q.        Right.  But if you didn=t have
the rain, you wouldn=t have the foundation problems is the point I am
trying to make.

A.        That=s right.  It requires both.








 

This testimony merely
indicates that Sealy=s theory of the foundation problems involves both the sewer
leaks and the rainwater.  As
noted, Sealy also stated that the rainwater was able to migrate under the
foundation because of the sewer leaks within the plumbing system.  According to the record, Sealy=s theory of the foundation problems
was that, due to sub-slab fill being washed away, a void was created, which
collapsed and caused damage to the structure. 
The Village Plumbing reports, indicating mud was present in the sewer
lines, appear to support Sealy=s theory.

Finally,
Sealy reiterated his opinion regarding the cause of the damage in an affidavit
attached to Tinsley=s response, stating: 

My opinion remains that once the break in the sewer
pipe occurred, water washed out portions of the surrounding soil creating a
void under the slab.  When this void
expanded, surface water was then allowed to flow beneath the slab to continue
the erosion.  The sub-slab soil was
allowed to wash out through the break in the sewer line.  These conditions caused the foundation to
subside and led to the problems of cracking walls and sticking doors in the
house.

The deposition testimony
that State Farm relies on does not controvert this opinion.  Moreover, even if a combination of factors
caused the damages, under the doctrine of concurrent causes, Tinsley is
entitled to recover the portion of damages caused by the covered peril.[12]  See Comsys Info. Tech. Servs., Inc. v.
Twin City Fire Ins. Co., 130 S.W.3d 181, 198 (Tex. App.CHouston [14th Dist.] 2003, pet.
denied).








Construing
the summary judgment evidence in Tinsley=s favor, as we must, we conclude a
genuine issue of material fact exists regarding the cause of the damages to
Tinsley=s residence.  Therefore, we hold the trial court erred in
granting summary judgment in favor of State Farm on Tinsley=s contract claim and sustain his
first appellate issue as to that cause of action. 

2.         The Extra-Contractual Claims

In his
pleadings, Tinsley alleged causes of action for breach of the common law duty
of good faith and fair dealing and violations of Insurance Code articles 21.21,
sections 3 and 4, and 21.55.[13]  Tinsley also pleaded a cause of action under
the DTPA and sought to recover  damages
under that statute.  Tinsley alleged that
State Farm improperly denied his claim and failed to conduct a reasonable
investigation by Aengaging biased engineers to perform investigations and make
specious conclusions about the cause of the damage.@ 
On appeal, Tinsley argues the trial court erred in granting summary
judgment on these claims because fact issues exist regarding whether State Farm
conducted a reasonable investigation into his claim.  We address these causes of action
collectively[14]
in our discussion.








Generally,
there can be no claim for bad faith when an insurer promptly denies a claim
that is in fact not covered.  Republic
Ins. Co. v. Stoker, 903 S.W.2d 338, 341 (Tex. 1995).  State Farm relied on this premise in the
trial court and, in addition to its no-evidence challenge to Tinsley=s breach- of- contract action, State
Farm argued that, because there was no evidence of coverage, it was entitled to
summary judgment as a matter of law on the extra-contractual claims.  Likewise, noting the trial court granted
judgment in its favor on the contract cause of action, State Farm asserts on
appeal it was therefore entitled to summary judgment on Tinsley=s extra-contractual claims.  Alternatively, State Farm argues that
its  evidence showed it had a reasonable
basis to deny Tinsley=s claimCreliance on Mgbeike=s report.  Because we have determined that a fact issue
exists concerning Tinsley=s breach- of- contract claim, the only question is whether
State Farm=s evidence disproved an element of
Tinsley=s extra-contractual claims as a
matter of law.  See City of
Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979) (stating
that a defendant as movant for summary judgment must either disprove at least
one element of each of the plaintiff=s causes of action or plead and
conclusively establish each element of an affirmative defense); cf. Saunders
v. Commonwealth Lloyd=s Ins. Co., 928 S.W.2d 322, 324 (Tex. App.CSan Antonio 1996, no writ) (noting
insurer moving for traditional summary judgment on insured=s bad faith and DTPA claims had
burden to prove it had a reasonable basis to deny the claim).

An
insurer breaches its duty of good faith and fair dealing by denying or delaying
payment of a claim when the insurer=s liability has become reasonably
clear.  See Universe Life Ins. Co. v.
Giles, 950 S.W.2d 48, 55 (Tex. 1997). 
Thus, an insurer will be liable for breach of the duty if it knew or
should have known that it was reasonably clear the claim was covered.  Id. at 56.  Determining whether a breach has occurred
focuses on the reasonableness of the insurer=s conduct in handling the claim and
not on whether the claim was valid.  Lyons
v. Millers Cas. Ins. Co., 866 S.W.2d 597, 601 (Tex. 1993).  Whether an insurer acted in bad faith because
it denied or delayed payment of a claim after its liability became reasonably
clear is a fact question.[15]  Giles, 950 S.W.2d at 56.








State
Farm argues that its summary judgment evidence conclusively established the
investigation it conducted was reasonable and appropriate because it included
hiring a plumber (Courtney), a professional engineer (Mgebeike), and a
geotechnical engineer (A&R).  State
Farm further asserts that the plumbing tests established Athere was no measurable loss of water@ at Tinsley=s residence and Athe foundation problems at the
Tinsley residence were not caused by plumbing leaks.@ 
As determined above, however, a fact issue remains as to whether there
is a bona fide dispute concerning coverage. 
Moreover, an insurer=s reliance upon an expert=s report, standing alone, will not
necessarily shield the insurer if there is evidence that the report was not
objectively prepared or the insurer=s reliance on the report was
unreasonable.  State Farm Lloyds v.
Nicolau, 951 S.W.2d 444, 448 (Tex. 1997). 
Here, Tinsley relies on the following as evidence that a fact issue
exists regarding the reasonableness of State Farm=s reliance on Mgebeike=s report.   

In
response to the summary judgment motion, Tinsley pointed to the Village
Plumbing invoices, claiming that because Mgbeike=s report was written without Aaccess to all the relevant data,@ it was unreasonable for State Farm
to rely on the report in denying his claim. 
He also claims bad faith is shown by the fact soil samples of the
property were not taken until approximately two months after State Farm denied
his claim based on Mgbeike=s seasonal changes conclusion.  Tinsley further asserts that the deposition
testimony of State Farm=s claims adjuster, Keith Bruce, is evidence of bad faith
because Bruce agreed with Tinsley=s counsel that it was reasonable for
Tinsley to ask State Farm to have the soil tested as part of its
investigation.  Most importantly, Tinsley
provided an affidavit from Sealy which stated, in part, the following:

In reviewing the analysis and conclusions of [Mgebeike=s report] it is my opinion that it was not reasonable
for the insurance adjuster to rely on the report from [Mgebeike].  My original opinion and rebuttal letter state
the problems with the analysis of [Mgebeike] and the lack of data to support
the conclusion that the foundation deflection was caused by seasonal
changes.  This conclusion also ignored
the data from Courtney Plumbing and Village Plumbing as well as the nature of the
deflection.








In all, a fact issue
exists concerning Tinsley=s extra-contractual claims.[16]  State Farm does not refer us to any authority
to support the proposition that because it relied on Mgebeike=s report, there can be no bad faith
here as a matter of law.   See
generally Nicolau, 951 S.W.2d at 448 (AWe have recognized that evidence
showing only a bona fide coverage dispute does not standing alone, demonstrate
bad faith. . . .  But we have never held
that the mere fact that an insurer relies upon an expert=s report to deny a claim
automatically forecloses bad faith as a matter of law.@). 
And Tinsley=s evidence raises a fact issue as to the reasonableness of
State Farm=s reliance on Mgebeike=s report.  We sustain Tinsley=s first issue.

V.  Conclusion

In
conclusion, State Farm=s no-evidence challenge to Tinsley=s breach of contract claim was
sufficiently specific to comply with Rule 166a(i), and we therefore overrule
Tinsley=s second appellate issue.  However, because the record evidence
indicates a fact issue exists as to the cause of the damage to Tinsley=s home and whether it was reasonable
for State Farm to rely on Mgebeike=s report, we sustain Tinsley=s first issue on appeal.  Accordingly, we reverse the trial court=s summary judgment in favor of State
Farm and remand for further proceedings consistent with this opinion.

 

 

/s/        Eva M.
Guzman

Justice

 

Judgment rendered and Memorandum
Opinion filed October 20, 2005.

Panel consists of Justices Frost,
Seymore, and Guzman. 











[1]  AState Farm Lloyds, Inc.@ was
incorrectly included as a party to the suit; judgment was rendered in favor of
State Farm Lloyds.  





[2]  According to
the record, four of these leaksBBnumbers three through sixBBare located in the front half of the house and on the
right hand side of the residence.  The
remaining leaks, numbers one and two, are located in the rear half of the home
and also lie towards the right half of the residence.     





[3]  Under static
testing, the main sewer line is blocked with an inflatable rubber ball and the
sewer system is filled with water to floor level.  A drop in the water level indicates the
system leaks.  Flow testing involves
pouring a known amount of water into the leaking fixtures and collecting water
that accumulates  outside the
foundation.  The difference between the
amount poured and the amount collected is the estimated loss under normal
conditions. 





[4]  The elevation
survey revealed that much of the foundation=s
deflection had occurred under the front portion of the house, on the right hand
side.  





[5]  The soil
samples were taken from three areas of the home: under bathroom No. 1 (B2),
bathroom No. 2 (B1), and the garage (B3). 
The borings were drilled to a depth of eight feet below the existing
ground surface.  The report contained
measurements regarding the percentage of the soil=s
moisture content, plasticity and liquidity indices, and shear strength
measurements.  A&R=s report described the soil as Aexpansive clays@ with a
high shrink/swell potential.  As stated
in A&R=s report, there were variations within the samples,
but A&R did not interpret the data to indicate what, if any, significance
there may have been to these variations. 





[6]  Leak numbers
3, 4, and 5 in Courtney=s report were located on what Mgbeike refers to in his
second report as the left wall of the residence.  In his elevation survey, Mgbeike referred to
this area of the home as the Afront right@ portion
and noted that the survey revealed the lowest elevation of the home was in this
area. 





[7]  State Farm
also claimed that, as a matter of law, because there was no evidence of
coverage it was also entitled to summary judgment on Tinsley=s Insurance Code violation claims and his DTPA
claim.  Because this Ano evidence@
assertion is no more than a restatement of State Farm=s no-evidence of coverage argument, we do not address
separately the specificity of its claim regarding these causes of action.





[8]  In Balandran,
the Texas Supreme Court construed language in a homeowners= policy similar to the language in Tinsley=s policy and determined that if the property loss
caused by foundation movement was due to a plumbing leak it was not excluded
under the policy.  973 S.W.2d at 739B40. 





[9]  The pecan tree
is located in the rear left portion of the home.  





[10]  Attached to
Sealy=s report is a copy of a study indicating that heaving
of the foundation is not always present when underslab sewer leaks cause
foundation movement. 





[11]  The record
contains letters or reports from both experts questioning the validity of the
other=s conclusions.  





[12]  To recover
under an insurance policy for damages caused by concurrent factors, the insured
must present some evidence upon which the jury can allocate the damages
attributable to the covered peril.  Comsys,
130 S.W.3d at 198. But the insured is only required to present some reasonable
basis on which the jury can allocate the damages.  Wallis v. United Servs. Auto. Ass=n, 2 S.W.3d
300, 304 (Tex. App.CSan Antonio 1999, pet. denied).  He is not required to allocate the plumbing
leak damage with mathematical precision. 
Id. 





[13]  See Tex. Ins. Code art. 21.21, '' 3B4, art. 21.55 (Vernon Supp. 2003), repealed and
recodified by Act of 2003, 78th Leg., ch. 1274, ' 2, 2003 Tex. Gen Laws 3641 (recodified as Tex. Ins. Code '' 541.051B.061
(Vernon Pamphlet 2004B05)). 





[14]  See
generally Higginbotham v. State Farm Mut. Auto. Ins. Co., 103 F.3d 456, 459
(5th Cir. 1997) (noting extra-contractual tort claims under the Insurance Code
and the DTPA require the same predicate for recovery as a common law bad faith
cause of action, and if there is no merit to the bad faith claim, there will be
no liability on the statutory claims); Mid-Century Ins. Co. v. Boyte, 80
S.W.3d 546, 549 (Tex. 2002) (stating the statutory standards and common law bad
faith standard regarding breach of duty of good faith and fair dealing are the
same). 





[15]  A court can
decide an issue as a matter of law when there is no conflict in the evidence,
but when there is evidence on either side, the issue is a fact question.  Giles, 950 S.W.2d at 56.  In this case, Tinsley pointed to evidence in
the record that he claimed was some evidence of State Farm=s bad faith; therefore, whether State Farm=s liability had become reasonably clear cannot be
determined as a matter of law in this case.





[16]  This is not to
say that when a trial court=s summary judgment as to a coverage claim is reversed,
the court=s summary judgment on the extra-contractual claims
must also be reversed.  See De
Laurentis v. United Servs. Auto. Ass=n, 162 S.W.3d 714, 726 (Tex. App.CHouston [14th Dist.] 2005, pet. filed).  We recognize that an insured=s claims for breach of contract and breach of the duty
of good faith and fair dealing are separate and distinct causes of action.  See Moriel, 879 S.W.2d at 17B18.  But under
the circumstances of this case, fact issues exist on both the contractual and
extra-contractual claims.